**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI**

| | |
|---|---|
| IN RE:  PRO LOGGING, INC. | CASE NO. 18-12428-JDW |
| DEBTOR | CHAPTER 11 |

**MOTION OF COMMERCIAL CREDIT GROUP INC. TO COMPEL
ADEQUATE PROTECTION UNDER SECURITY AGREEMENTS**

Commercial Credit Group Inc. ("CCG"), a creditor and party in interest in the above referenced bankruptcy action (the "Case"), and, pursuant to 11 U.S.C. § 361, herewith files this its "Motion to Compel Adequate Protection Under Security Agreements" (the "Motion"), wherein it seeks to compel Pro Logging, Inc., debtor in the above-captioned action ("Pro Logging"), to i) make regular ongoing payments to CCG in order to adequately protect CCG's interest in certain equipment and rolling stock of Pro Logging in which CCG holds a properly perfected security interest; and ii) take other steps as required by the Security Agreements that Pro Logging has executed in favor of CCG in order to adequately protect CCG.  In support of its Motion, CCG respectfully shows this Court as follows:

**I.     THE PARTIES AND JURISDICTION**

1. On June 22, 2018 (the "Petition Date"), Pro Logging filed a voluntary petition in the Case seeking relief under Chapter 11 of Title 11 of the United States Code.

2. The Motion is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

3. This Court has jurisdiction over the Motion, and the adjudication thereof, pursuant to 28 U.S.C. § 1334.

4. The statutory predicates for the relief requested include 11 U.S.C. § 361 and Fed. R. Bankr. P. 4001(a).

## II. PRO LOGGING'S BUSINESS

5. Pro Logging is apparently involved in the business of cutting and harvesting timber.

6. In order to carry out its business, Pro Logging owns a significant amount of logging equipment, including, but by no means limited to, skidders, skid-steers, feller-bunchers, crawler tractors, and loaders.

7. It is unclear, pending the completion of discovery,[1] the extent to which Pro Logging maintains any inventory of tires, spare parts, fuel or other consumable goods.

## III. THE CCG LOANS

8. CCG extended five commercial loans to Pro Logging, Pro Trucking, Inc. and Russell M. Stites, as co-borrowers (collectively, the "Obligors"), each of which is secured by the collateral identified below.

### A. Loan No. 1601

9. On November 7, 2016, CCG extended a commercial loan to Pro Logging, evidenced by a "Negotiable Promissory Note" in the original principal amount of $760,830.00, which was thereafter amended and modified under the terms and conditions of an "Amendment to Negotiable Promissory Note and

---

[1] CCG intends to vigorously pursue discovery from Pro Logging pursuant to Fed. R. Bankr. Proc. 2004 (a) – (c) early in the Case in order to better define how Pro Logging operates its business and utilizes CCG's collateral.

Document      Page 3 of 13

Security Agreement/Lease/Conditional Sale Contract" and a "Rider to Promissory Note" (together, "Note 1601").

10. To secure the obligations evidenced by Note 1601, Pro Logging executed a Security Agreement ("Security Agreement 1601") in CCG's favor, which granted CCG a security interest in, among other things, the equipment identified and fully described in Exhibit "A" to Security Agreement 1601 (the "1601 Equipment").

11. CCG perfected its security interest in the 1601 Equipment by filing UCC Financing Statements (the "1601 UCCs") with the Office of the Mississippi Secretary of State, bearing File Nos. 20162122271A, 20162122277A, and 20162122265A.

12. Note 1601, Security Agreement 1601, and the 1601 UCCs are attached to CCG's Motion to Prohibit Use of Cash Collateral (the "Motion to Prohibit") [Doc. No. 19] as collective Exhibit "1".

### B. Loan No. 1602

13. Also on November 7, 2016, CCG extended a second commercial loan to Pro Logging, evidenced by a "Negotiable Promissory Note" in the original principal amount of $770,868.00, which was thereafter amended and modified under the terms and conditions of an "Amendment to Negotiable Promissory Note and Security Agreement/Lease/Conditional Sale" (together, "Note 1602").

14. To secure the obligations evidenced by Note 1602, Pro Logging executed a Security Agreement ("Security Agreement 1602") in CCG's favor, which granted CCG a security interest in, among other things, the equipment identified

3

and fully described in Exhibit "A" to Security Agreement 1602 (the "1602 Equipment").

15. CCG perfected its security interest in the 1602 Equipment by filing UCC Financing Statements (the "1602 UCCs") with the Office of the Mississippi Secretary of State, bearing File Nos. 20162122260A, 20162122255A, and 20162122252A.

16. Note 1602, Security Agreement 1602, and 1602 UCCs are attached to CCG's Motion to Prohibit as collective Exhibit "2".

### C. Loan No. 1603

17. Also on November 7, 2016, CCG extended a third commercial loan to Pro Logging, evidenced by a "Negotiable Promissory Note" in the original principal amount of $758,646.00, which was thereafter amended and modified under the terms and conditions of an "Amendment to Negotiable Promissory Note and Security Agreement/Lease/Conditional Sale" (together, "Note 1603").

18. To secure the obligations evidenced by Note 1603, Pro Logging executed a Security Agreement ("Security Agreement 1603") in CCG's favor, which granted CCG a security interest in, among other things, the equipment identified and fully described in Exhibit "A" to Security Agreement 1603 (the "1603 Equipment").

19. CCG perfected its security interest in the 1603 Equipment by filing UCC Financing Statements (the "1603 UCCs") with the Office of the Mississippi Secretary of State, bearing File Nos. 20162122220A, 20162122217A, and 20162122214A.

4

20.  Note 1603, Security Agreement 1603, and the 1603 UCCs are attached to CCG's Motion to Prohibit as collective Exhibit "3".

### D. Loan No. 1604

21.  Also on November 7, 2016, CCG extended a fourth commercial loan to Pro Logging, evidenced by a "Negotiable Promissory Note" in the original principal amount of $840,084.00, which was thereafter amended and modified under the terms and conditions of an "Amendment to Negotiable Promissory Note and Security Agreement/Lease/Conditional Sale Contract" and a "Rider to Promissory Note" (together, "Note 1604").

22.  To secure the obligations evidenced by Note 1604, Pro Logging executed a Security Agreement ("Security Agreement 1604") in CCG's favor, which granted CCG a security interest in, among other things, the equipment and rolling stock identified and fully described in Exhibit "A" to Security Agreement 1604 (the "1604 Equipment").

23.  CCG perfected its security interest in the 1604 Equipment by i) taking possession of certain Certificates of Title covering the 1604 Equipment (the "1604 Certificates of Title"); and ii) filing UCC Financing Statements (the "1604 UCCs") with the Office of the Mississippi Secretary of State, bearing File Nos. 20162122245A, 20162122247A, and 20162122237A.

24.  Note 1604, Security Agreement 1604, the 1604 UCCs, and the 1604 Certificates of Title are attached to CCG's Motion to Prohibit as collective Exhibit "4".

### E. Loan No. 1605

25. Also on November 7, 2016, CCG extended a fifth commercial loan to Pro Logging, evidenced by a "Negotiable Promissory Note" in the original principal amount of $588,546.00, which was thereafter amended and modified under the terms and conditions of an "Amendment to Negotiable Promissory Note and Security Agreement/Lease/Conditional Sale Contract" (together, "Note 1605").

26. To secure the obligations evidenced by Note 1605, Pro Logging executed a Security Agreement ("Security Agreement 1605") in CCG's favor, which granted CCG a security interest in, among other things, the equipment and rolling stock identified and fully described in Exhibit "A" to Security Agreement 1605 (the "1605 Equipment").

27. CCG perfected its security interest in the 1605 Equipment by i) taking possession of certain Certificates of Title covering the 1605 Equipment (the "1605 Certificates of Title"); and ii) filing UCC Financing Statements (the "1605 UCCs") with the Office of the Mississippi Secretary of State, bearing File Nos. 20162122233A, and 20162122222A.

28. Note 1605, Security Agreement 1605, the 1605 UCCs, and the 1605 Certificates of Title are attached to CCG's Motion to Prohibit as collective Exhibit "5".

### IV. THE COLLATERAL SECURITY INTEREST

29. To secure repayment of Notes 1601, 1602, 1603, 1604 and 1605 (collectively, the "Notes"), pursuant to the terms of Security Agreements 1601, 1602, 1603, 1604 and 1605 (collectively, the "Security Agreements"), Pro Logging granted

6

CCG security interests in, among other things, each and every one of the goods, chattels and property described in the schedules attached to each of the Security Agreements, as well as any and all accounts, accounts receivable, chattel paper, contract rights, documents, equipment, fixtures, general intangibles, goods, instruments, inventory, securities, deposit accounts, investment property and all other property of whatever nature and kind, wherever located, in which Pro Logging now or hereafter has any right or interest and in any and all attachments, accessories, substitutions, replacements, replacement parts, additions, software and software upgrades and all cash and non-cash proceeds (including rental proceeds, insurance proceeds, accounts and chattel paper arising out of or related to the sale, use, rental or other disposition thereof) to any of the foregoing (collectively, the "Collateral").

30. The Notes and the Security Agreements are cross-collateralized with all obligations, debts and liabilities owed to CCG by Pro Logging pursuant to the cross-collateralization provisions in the Notes.

31. Under the terms of the Notes, the Obligors are obligated to pay to CCG an aggregate payment of $86,830.00 each month.

32. CCG has not received a payment from the Obligors, or any one of them, since April 18, 2018. The payment that CCG received on April 18, 2018 was only a single monthly payment for the monthly amount due on Note 1601.

33. The Obligors have not made a full regular monthly payment or payments of the aggregate amounts due under the Notes since November, 2017. Of

the $347,320.00 in monthly payments that the Obligors were required to pay under the Notes since that time[2], CCG has only received $21,115.00.

## V. RELIEF REQUESTED

### A. Monthly Adequate Protection Payments

34. Pro Logging continues to use the equipment and rolling stock that comprises a majority of the Collateral each day in the ordinary course of its business.

35. On information and belief, Pro Logging's equipment and rolling stock is being subjected to hard use. Commercial timber cutting and removal is a physically difficult business that is hard on equipment. Further, logging activities are often conducted in wet, swampy and low areas.

36. On information and belief, Pro Logging is utilizing its equipment and rolling stock on a continuous basis, in order to maximize the amount of timber that can be cut and removed by any given crew each day. This continuous use contributes to wear, tear and functional obsolescence of the equipment and diminishes the value of this equipment.

37. CCG respectfully moves this Court for an order compelling Pro Logging to make regular monthly payments to CCG to compensate CCG for the continuous decline and diminution in the value of its Collateral equipment and rolling stock. The amount of said monthly payments will be equal to the aggregate monthly

---

[2] This amount represents a discount from the full amount due based on the amendments to the Notes on March 16, 2018.

8

## B. Proof of Adequate Commercially Reasonable Insurance

38. Each of the Security Agreements requires Pro Logging to maintain insurance on the Collateral equipment and rolling stock.

> Debtor will insure the Collateral, at its sole cost and expenses, by maintaining an "all risk" insurance policy naming the Secured Party as additional insured and loss payee, in an amount at least equal to the full replacement value of all collateral identified in each Schedule A attached or incorporated herein and also, where requested by secured party, against other hazards (including but not limited to comprehensive general liability insurance) with companies, in amount of coverage and deductible provisions, and under policies acceptable to Secured Party. Each policy shall be delivered to Secured Party and shall expressly state the insurance as to Secured party shall not be invalidated by any act, omission or neglect of Debtor and that the insurer shall give thirty (30) days written notice to Secured Party of any alteration, termination or cancelation of the policy.

39. Prior to this Motion CCG has made numerous demands upon Pro Logging for written verification that Pro Logging is maintaining, and is fully current with its premium payments due on, the required commercially reasonable insurance for both the equipment and the rolling stock Collateral.  To date, Pro Logging has failed and refused to provide CCG with standardly accepted ACORD or other similar statements verifying the amount and nature of the coverages in place to insure the Collateral.

40. CCG respectfully moves this Court for an Order compelling Pro Logging, within two (2) business days from the entry of the Order, to provide written proof to CCG that it does, in fact, have adequate and acceptable insurance in place to insure both the equipment and rolling stock Collateral against all risks.  To the extent that Pro Logging cannot demonstrate that it has adequate insurance in place for the Collateral, CCG moves this Court for:

  a)  relief from the automatic stay to proceed with repossession of the pieces of the Collateral that are uninsured; or, in the alternative

  b)  an Order sequestering the pieces of the Collateral that are uninsured at Pro Logging's main facility until such time as Pro Logging can provide verifiable written proof of insurance.

### C. Inspection of the Collateral

41. The Security Agreements require that Pro Logging maintain the equipment and rolling stock that comprises the Collateral in good condition.

> Debtor, at its own cost and expense, will maintain and keep the Collateral in good repair, will not waste, abuse or destroy the Collateral or any part thereof and will not be negligent in the care and use thereof.

42. CCG is unable to verify that Pro Logging is complying with its obligations under the Security Agreements. CCG's representatives have tried to contact Pro Logging's President at Pro Logging's main facility, but have not been able to see Pro Logging's President or inspect the equipment.

43. Without cooperation from Pro Logging to:

  a) Make the equipment and the rolling stock that comprises the Collateral available to CCG or its agents for thorough inspection; and

  b) Pinpointing the exact location of each piece of equipment and rolling stock such that CCG or its agents can easily locate and identify same,

CCG cannot verify that the Collateral is being maintained and CCG's interests are being protected.

44. CCG respectfully asks this Court for an Order compelling Pro Logging to make the equipment and rolling stock that comprises the Collateral available for inspection, during regular business hours and on three (3) business days' notice, at wherever the equipment and rolling stock shall be found in the ordinary course of Pro Logging's business. Said inspection shall be at no expense to Pro Logging save and except the administrative time necessary to pinpoint the exact location of each piece of equipment and rolling stock and make said equipment and rolling stock available for thorough inspection by CCG or its agents.

**WHEREFORE**, CCG respectfully requests that the Court enter an Order:

1) Compelling Pro Logging to make regular monthly payments to CCG to compensate CCG for the continuous decline and diminution in the value of its Collateral. The amount of said monthly payments will be equal to the aggregate monthly payment due on the Notes, which is $86,830.00, as proven at the hearing on this Motion; and

2) Compelling Pro Logging, within two (2) business days from the entry of the Order, to provide written proof to CCG that it has adequate and commercially reasonable insurance in place to insure both the equipment and the rolling stock Collateral against all risks. To the extent that Pro Logging cannot demonstrate that it has adequate insurance in place for the Collateral, CCG moves this Court for:

    a) relief from the automatic stay to proceed with repossession of the pieces of the Collateral that are uninsured; or, in the alternative,

11

      b) an Order sequestering the pieces of the Collateral that are uninsured at Pro Logging's main facility until such time as Pro Logging can provide verifiable written proof of insurance; and

3) Compelling Pro Logging to make the equipment and rolling stock that comprises the Collateral available for inspection, during regular business hours and on three (3) business days' notice, wherever the equipment and rolling stock may be found in the ordinary course of Pro Logging's business. Said inspection shall be at no expense to Pro Logging, save and except administrative time necessary to pinpoint the exact location of each piece of equipment and rolling stock and make said equipment and rolling stock available for thorough inspection by CCG or its agents; and

4) Granting such other and further relief as this Court deems just and proper under the circumstances.

Dated: June 28, 2018.

**COMMERCIAL CREDIT GROUP INC.**

By: /s/ Timothy J. Anzenberger
Timothy J. Anzenberger (MSB No. 103854)
ADAMS AND REESE LLP
1018 Highland Colony Parkway, Suite 800
Ridgeland, MS 39157
Telephone:   601.353.3234
Facsimile:   601.355.9708
tim.anzenberger@arlaw.com

*and*

By: /s/ John A. Thomson, Jr.
John A. Thomson, Jr. (PHV)
ADAMS AND REESE LLP
3424 Peachtree Road, NE, Suite 1600
Atlanta, Georgia 30326
Telephone:   470.427.3706
Facsimile:   404.500.5975
john.thomson@arlaw.com

**CERTIFICATE OF SERVICE**

Service provided via Notice of Electronic Filing (NEF) through ECF:

*Karen B. Schneller;*
*John M. Lassiter; and*
*Office of the U.S. Trustee.*

Dated: June 28, 2018.

/s/ Timothy J. Anzenberger
*Of Counsel*