## THE UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF MISSISSIPPI
## (ABERDEEN)

IN RE:

**PRO LOGGING, INC.,**

   **Debtor.**

**Case No. 18-12388-JDW**
**Judge Jason D. Woodard**
**Chapter 11**

## MOTION TO PROHIBIT DEBTOR'S USE OF NON-ESTATE PROPERTY AND TO COMPEL TURNOVER

Comes now Colonial Funding Network, Inc. as the servicing provider for Money Works Direct, Inc. a/k/a Supersonic Funding ("Colonial"), by counsel, and moves the Court for an order prohibiting the Debtor from using non-estate property and compelling turnover of non-estate property, and in support thereof states as follows:

### Background

1.      Pro Logging, Inc. d/b/a Pro Logging (the "Debtor") filed a voluntary petition for relief under chapter 11 of the bankruptcy code on June 20, 2018 (the "Petition Date").

2.      Debtor continues in possession of its properties as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed.

3.      Prior to the Petition Date, on or about March 2, 2017, Russell Marion Stites, in his capacity as president of the Debtor, Pro Trucking, Inc. d/b/a Pro Trucking ("Pro Trucking"), and Pro South, Inc. d/b/a Pro South ("Pro South" and together with the Debtor and Pro Trucking, the "Merchant") and in his individual capacity as guarantor, executed a Revenue Based Factoring (RBF/ACH) Agreement (hereinafter "Agreement") with Colonial. A copy of the Agreement is attached hereto as **Exhibit 1**.

4.      In the Agreement, the Debtor sold and Colonial purchased Debtor's receivables in the amount of Five Hundred Ninety Thousand, Seven Hundred Fifty Dollars ($590,750.00) (the "Purchased Receivables") in exchange for an up-front advance in the amount of Four Hundred Twenty-Five Thousand Dollars ($425,000.00) (the "Purchase Price").

5.      Pursuant to the Agreement, Debtor agreed to deposit all of its receipts in one (1) bank account acceptable to Colonial (the "Agreed Account") and irrevocably authorized Colonial to debit the Purchased Receivables from the Agreed Account via ACH (Automatic Clearing House) payments in the weekly amount of Eleven Thousand, Thirty-One Dollars ($11,031.00).

6.      On or about March 16, 2017, Colonial fulfilled its obligations under the Agreement by advancing the Purchase Price to Merchant, less any fees and less the balance owed on a previous agreement.

7.      On or about July 29, 2016, Colonial filed a UCC-1 financing statement (the "Financing Statement") with the Mississippi Secretary of State, thereby perfecting its purchase of the Purchased Receivables. A copy of the UCC-1 is attached hereto as **Exhibit 2**.

8.      On or about January 19, 2018, Colonial learned that Merchant's next ACH payment did not clear (i.e. was rejected). Upon information and belief, the transaction did not clear because Merchant issued a stop payment, or otherwise instructed its banking institution to "block" Colonial from debiting from its account, thereby breaching the terms of the Agreement.

9.      The last payment made by Merchant was in the amount of Ten Thousand, Six Hundred Thirty-Six Dollars ($10,636.00) on January 8, 2018 therefore, pursuant to paragraph 3.1 of the Agreement, Merchant is in Default of the Agreement.

10.     Colonial exercised its rights under paragraph 1.11 of the Agreement by accelerating and demanding the full balance of the Purchased Receivables and by filing a lawsuit against Merchant in Virginia.

11.     As of the Petition Date, Merchant, including the Debtor, owes Colonial no less than One Hundred Thirty-Four Thousand, Ninety 61/100 Dollars ($134,090.61), not including costs and reasonable attorney's fees for legal proceedings, which Colonial is entitled to recover pursuant to paragraph 1.11 of the Agreement.

## The Purchased Receivables are Not Property of the Estate

12.     Section 541 of the Bankruptcy Code governs property of the Debtor's estate; however, the provisions of the Bankruptcy Code that govern property of the estate are borrowing statutes. The Bankruptcy Code "does not create any property rights, but rather it protects legal or equitable interests already in existence". *In re Air Illinois, Inc.*, 53 B.R. 1, 2 (Bankr. Ill., 1984). Therefore, state law primarily determines whether Debtor has a property right or interest in specific property. *Butner v. United States*, 440 U.S. 48, 54 (1979); *Mutual Benefit Life Ins. Co. v. Pinetree, Ltd. (In Re Pinetree Ltd.)*, 876 F.2d 34, 36 (5th Cir. 1989); *Maiona v. Vassilowitch (In re Vassilowitch)*, 72 B.R. 803, 805 (Bankr. D. Mass. 1987).

13.     Pursuant to Paragraph 4.5 of the Agreement, the Agreement is governed in accordance with the laws of the Commonwealth of Virginia.

14.     Article 9 of the Virginia Uniform Commercial Code ("Article 9") provides guidance as to the property rights between the Debtor and Colonial with regard to the Purchased Receivables. Although Article 9 generally governs secured transactions, in the context of "accounts," Article 9 also applies to the sales of accounts because the term "security interest"

includes "any interest … of a buyer of accounts." Va. Code Ann. § 8.1A-201(35).    The

Purchased Receivables are "Account(s)" within the meaning of Va. Code Ann. § 8.9A-102(a)(2).

15.    Under Virginia law, "[a] debtor that has sold an account, a chattel paper, a

payment intangible, or promissory note does not retain a legal or equitable interest in the

collateral sold." Va. Code Ann. § 8.9A-318(a).  Pursuant to Va. Code Ann. § 8.9A-102(a)(28)(B)

the term "Debtor" includes a seller of accounts.

16.    The official comment to Va. Code Ann. § 8.9A-318(a) further elaborates:

> Subsection (a) makes explicit what was implicit, but perfectly obvious, under
> former Article 9: The fact that a sale of an account or chattel paper gives rise to a
> "security interest" does not imply that the seller retains an interest in the property
> that has been sold. To the contrary, a seller of an account or chattel paper retains
> no interest whatsoever in the property to the extent that it has been sold.

Va. Code Ann. § 8.9A-318(a), Official Comment 2.

17.    Additionally, the subject Agreement is very clear that it is an agreement for the

purchase and sale of receivables, and not a loan. The first sentence of the Agreement states

"Merchant hereby sells, assigns and transfers to MWD . . . all of Merchant's future receipts,

accounts, contract rights and other obligations arising from or relating to the payment of monies

from Merchant's customers' and/or other third party payors . . . ."

18.    Paragraph 1.9 of the Agreement further states that

> "Merchant and MWD agree that the Purchase Price under this Agreement is in
> exchange for the Purchased [Receivables] and that such Purchase Price is not
> intended to be, nor shall it be construed as a loan from MWD to Merchant.
> Merchant agrees that the Purchase Price is in exchange for the sale of future
> Receipts pursuant to this Agreement equals the fair market value of such Receipts.
> MWD has purchased and shall own all the Receipts described in this Agreement up
> to the full Purchased Amount as the Receipts are created. Payments made to MWD
> in respect to the full amount of the Receipts shall be conditioned upon Merchant's
> sale of products and services and the payment therefore by Merchant's customers in
> the manner provided in Section 1.1."

19.     In executing the Agreement, the Debtor transferred all right, title and interest in all of its receivables to Colonial until the full amount of the Purchased Receivables were remitted.   In other words, the Debtor has no interest in the Purchased Receivables, having previously sold the Purchased Receivables to Colonial, and thus the bankruptcy estate similarly has no interest in the Purchased Receivables.

### The Debtor Must be Prohibited from the Use of Non-Estate Property

20.     The Debtor has no interest in the Purchased Receivables and thus may not utilize the Purchased Receivables or their proceeds for the benefit of its estate.

21.     Because the Debtor has no interest in the Purchased Receivables the receipts the Debtor is currently collecting do not constitute "cash collateral" which the Debtor may utilize under § 363 of the Bankruptcy Code. Rather, those funds are the property of Colonial  which the Debtor has improperly converted.

22.     Because the Purchased Receivables are not property of the Estate the Debtor is obligated to turn over the Purchased Receivables to Colonial. *See Todd v. Pettit*, 108 F.2d 139, 139 (5th Cir. 1938) ("When it appears that the bankrupt is only a trustee and has no beneficial interest in or claim against the property, the court ought to turn it over to its true owners where possible."); *In re Florian*, 233 B.R. 25, 27 (Bankr. D. Conn. 1999) (directing trustee to turnover insurance proceeds which did not constitute property of the debtor's estate); *Matter of Georgian Villa, Inc.*, 10 B.R. 79, 83-84 (Bankr. Ga. 1981); *In re Clemens*, 472 F.2d 939 (6th Cir. 1972).

### Alternative Relief

23.     In the alternative, should the Court allow the Debtor's use of the Purchased Receivables, the Court should order that the Debtor provide Colonial with sufficient protections and assurances. Specifically, the Court should order require:

a. The Debtor must maintain its cash collateral in the same level that existed prepetition and not allow cash collateral to diminish.

b. That the Debtor operate strictly in accordance with a budget and spend cash collateral not to exceed five percent (5%) above the amount shown in the budget. The debtor should provide Colonial with monthly reports which reflect its actual receipts and expenditures for the prior month. The Court should not authorize the disposition of any Pre-Petition Collateral outside the ordinary course of business without the prior written consent of Colonial.

c. The Debtor must make monthly adequate protection payments to Colonial in an amount sufficient to protect Colonial' interest during the time Debtor is permitted to use Colonial' property.

d. As additional adequate protection the Debtor must provide Colonial a valid, perfected lien upon, and security interest in, to the extent and in the order of priority of any valid lien pre-petition, all cash or other proceeds generated post-petition by Debtor's pre-petition collateral, and by the use of Colonial's property, and without the need to file or execute any document as may otherwise be required under applicable non-bankruptcy law. Colonial's liens against Debtor's cash collateral shall extend to any account holding such cash collateral, regardless of whether Colonial has control over such account, and encumbers any cash collateral held in debtor-in-possession accounts required by applicable law. Additionally, Colonial must be entitled to an administrative expense claim pursuant to 11 USC 507(b) to the extent the above adequate protection proves insufficient and/or does not offset any diminution of value in the cash collateral. The liens and security interests granted hereunder must be deemed to be filed and perfected by entry of an order granting the same as of the Petition Date without any further action by any party, and must be in the same priority as of the Petition Date.

e. The Debtor must maintain insurance coverage for the Purchased Receivables and all other collateral securing Colonial's interests and name Colonial as loss payee and certificate holder to such policy. Debtor must provide proof of insurance upon request.

f. Upon reasonable notice, Debtor must grant Colonial access to Debtor's business records and premises for inspection.

g. Debtor must timely perform all obligations of a debtor-in-possession required by the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure and orders of this Court.

h. Unless waived by Colonial in writing, the Debtor must immediately cease using Colonial's property upon the occurrence of one of the following events (an "Event of Default"):

    1) If a trustee is appointed in this Chapter 11 case;

    2) If the Debtor breaches any term or condition of this Order or the Agreement, other than defaults existing as of the Petition Date;

    3) If the case is converted to a case under Chapter 7 of the Bankruptcy Code;

    or

    4) If the case is dismissed.

i. The Debtor must promptly provide to Colonial such additional or other financial information as Colonial may from time to time reasonably request.

j. The Debtor must waive any claim under 11 U.S.C. 506 and Colonial must not be subject to the equitable doctrine of marshalling.

WHEREFORE, Colonial respectfully prays that the Court enter an order prohibiting Debtor from using the Purchased Receivables, directing Debtor to turn over the Purchased Receivables to Colonial, awarding Colonial its costs and reasonable attorney's fees and granting such other and further relief as may be appropriate.

Dated:  September 11, 2018        Respectfully Submitted,

**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ, PC**

 /s/ *Erno Lindner*
Erno Lindner (MS Bar No. 104073)
633 Chestnut Street, Suite 1900
Chattanooga, Tennessee 37450
Telephone: (423) 209-4206
E-mail:  elindner@bakerdonelson.com

*Counsel for Colonial Funding Network, Inc.
as the servicing provider for Colonial
Direct, Inc. a/k/a Supersonic Funding*

## <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on September 11, 2018 a copy of the foregoing was served on the parties listed below by first-class mail, postage prepaid, unless said party is a registered CM/ECF participant who has consented to electronic notice, and the Notice of Electronic Filing indicates that Notice was electronically mailed to said party:

Karen B. Schneller
P.O. Box 417
Holly Springs, MS  38635

U. S. Trustee
501 East Court Street, Suite 6-430
Jackson, MS  39201

Timothy J. Anzenberger
Adams and Reese LLP
1018 Highland Colony Parkway
Suite 800
Ridgeland, MS 19357

John Archer Thomson
3424 PeachtreeRoad NE,
Suite 1600
Atlanta, GA 30326

IRS
Attn: Special Processing Staff
100 West Capitol St. Room 504
Jackson, MS 39269

Mississippi State Tax Commission
Bankruptcy Section
PO Box 22808
Jackson, MS 39225

Joe A. Joseph
Regan C Loper
Burr & Forman, LLP
420 20th Street North
Suite 3400
Birmingham, AL 35203

John M. Lassiter
401 East Capitol Street.
Suite 100
Jackson, MS 39201

James T. Milam
Milam Law P.A.
Post Office Box 1128
Tupelo, MS 38802-1128

Chad J. Hammons
Jones Walker
P.O. Box 427
Jackson, MS 39202-0427

D. Sterling Kidd
Baker Donelson Bearman Caldwell &
Berkowitz
Post Office Box 14167
Jackson, MS 39236

Robert Alan Byrd
145 Main Street
P. O. Box 1939
Biloxi, MS 39533

Stacey Moore Buchanan
Simpson Law Firm, P.A.
Post Office 1410
Ridgeland, MS 39158-1410

c/o Matthew F. Kye Hitachi Capital
America Corp.
Kye Law Group, P.C
201 Old Country Road, Suite 120
MELVILLE, NY 11747

BlueBridge Financial, LLC
535 Washington Street, Suite 201
Buffalo, NY 14203

Capital Merchant Services
One Evertrust Plaza, Suite 1401
Jersey City, NJ  07302

Caterpillar Financial Services
Post Office Box 340001
Nashville, TN 37203

GCR Tire & Service
2625 Hwy 20
Tuscumbia, AL  35674

H&E Equipment Services
Post Office Box 849850
Dallas, TX 75284

Martyville Quick Mart
1379 Hwy 25
Tishomingo, MS  38873

Napa Auto Parts
1105 South Gloster
Tupelo, MS 38801

PowerPlan
Post Office Box 5328
Madison, WI 53705

Thompson Machinery
1245 Bridgestone Blvd
La Vergne, TN 37086

Camso USA, Inc.
Post Office Box 60158
Charlotte, NC 28260

Cash Capital Group, LLC
The Rubin Law Firm, PLLC
Ashlee Cohen, Esq.
90 Broad Street, 16th Floor
New York, NY 10005

Financial Pacific Leasing
3455 S. 344th Way, Ste 300
Auburn, WA 98001

H&E Equipment Services
5245 Hwy 78
Memphis, TN 38118

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA  19101

Money Works Direct, Inc.
Timothy A. Hennigan, Esq.
Post Office Box 1958
Ashland, VA 23005

Panther Petroleum, LLC
396 Airways Blvd
Jackson, TN 38301

Summit Truck Group
Post Office Box 529
Tupelo, MS 38802

Pro Logging, Inc.
619 Highway 30 East
Booneville, MS 38829

*/s/ Erno Lindner*